UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| KINZA ABDUL-SALAAM, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | No. 4:18 CV 1547 DDN |
| TRANS STATES AIRLINES, LLC, | ) | |
| Defendant. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant Trans States Airlines, LLC to dismiss the amended complaint of plaintiff Kinza Abdul-Salaam. (Doc. 43). While the matter has been fully briefed, the Court notes that plaintiff has included matters outside of the pleadings in her response to defendant's Rule 12(b)(6) motion. For the reasons set forth below, the motion under 12(b)(1) is denied, and the Court converts the 12(b)(6) motion to one for summary judgment, pursuant to Federal Rule of Civil Procedure 12(d).

# BACKGROUND

Plaintiff alleges the following facts in her amended complaint (Doc. 35). Plaintiff is an African American woman who was employed as a flight attendant for defendant from February 2013 until April 2017. She alleges five instances of adverse employment actions due to her race, color, and gender.

First, in August 2016, plaintiff was on sick leave when her minor grandson tried to fly on a United Airlines flight using plaintiff's pass rider privileges. The gate agent did not let plaintiff's grandson or any other stand-by passengers board. The stand-by passengers were people of color. After the flight was closed, a Caucasian family rushed into the gate area and was allowed to board the plane. The woman accompanying

plaintiff's grandson called plaintiff, handing the phone to the gate agent. Plaintiff attempted to speak with the gate agent, but the gate agent handed the phone back. Plaintiff immediately made a report to United Airline's EthicsPoint that the only people not allowed to board that flight were people of color. The gate agent's supervisor then lodged a complaint against plaintiff.

Approximately three weeks later, defendant notified plaintiff to attend a mandatory meeting in St. Louis, warning plaintiff to "be advised that this meeting may result in disciplinary action." At the meeting, plaintiff was questioned about her grandson's use of pass rider privileges while plaintiff was on sick leave. Plaintiff informed defendant that she had not travelled with her grandson or used her travel privileges while on sick leave, that she had filed a race discrimination complaint with United, and that she had not raised her voice on the phone call with the gate agent. Plaintiff provided defendant proof that she had made a complaint of racial discrimination, but defendant did not contact plaintiff or her family members who had witnessed the incident. Defendant suspended plaintiff without pay for 7 days and suspended her travel benefits for 90 days based on the United Airlines complaint and the use of her travel privileges.

Second, in September 2016, a Caucasian passenger sitting in the exit row refused to listen to plaintiff's exit row safety briefing. Plaintiff sought out the Caucasian First Officer to de-escalate the situation, and the First Officer removed the passenger from the aircraft. Plaintiff, the First Officer, and the plane's Captain, who was also Caucasian, created incident reports about the passenger's removal. While defendant investigated the matter, plaintiff was directed to attend a mandatory meeting and was removed from the schedule. However, the First Officer and Captain were allowed to continue working. Defendant later determined that plaintiff properly followed procedures with the belligerent passenger. On October 4, 2016, plaintiff filed a charge of discrimination with the Missouri Commission on Human Rights (MCHR) and the Equal Employment Opportunity Commission (EEOC) against defendant.

Third, in November 2016, plaintiff was completing pre-flight procedures on a delayed flight.  After making announcements, conducting a final count, briefing passengers on exit rows, and checking the lavatory, she crouched down to begin stocking the commissary, hoping to finish before being directed to close the aircraft door.  Behind her, an unidentified man asked "Did you make your announcements?"  Plaintiff did not know who he was, so she quickly finished stocking the commissary before standing to address him.  The man asked plaintiff for her name and said "Your supervisors will hear about this."  Plaintiff was then ordered to close the aircraft door.  As she closed the door, the man continued to say he would report her.  Defendant required plaintiff to attend another mandatory meeting, and again advised that it might result in disciplinary action.  At the meeting, plaintiff was informed she was suspended for 15 days because of her actions with the man.

Fourth, in December 2016, plaintiff applied for and was granted Family Medical Leave Act leave, effective December 1, 2016.  In February 2017, plaintiff's psychiatrist released her to return to work on March 1, 2017.  In a second appointment, defendant's doctor examined plaintiff and also told plaintiff she would be released to return to work.  However, before the appointment ended, defendant's doctor left the room to speak with defendant's Director of Inflight Services.  When he returned, he now informed plaintiff that he would not release her to return to work on March 1, 2017, but that she could return to work in April 2017.

Finally, on April 3, 2017, defendant orally ordered plaintiff to attend a meeting at Washington International Airport the next day, on April 4, 2017, and then to report for on-call flight attendant duty for the remainder of the day.  Plaintiff emailed the Director, stating her employee badge had expired while she was on FMLA leave and she would not be able to access the offices at the airport.  Plaintiff also tried on her uniforms and informed the Director that they did not fit, and it was against defendant's policies to report to work in civilian clothes or in uniforms that did not fit.  She informed the Director, who instructed her to order properly fitting uniforms, but plaintiff's uniform credit and login information had also expired during her FMLA leave.  Defendant

rescheduled plaintiff's mandatory meeting for April 5, 2016, a day when it knew plaintiff would not yet have received her new uniforms. Plaintiff called both her immediate boss and the Director and left them voicemails, but neither returned her calls. Defendant terminated plaintiff on April 5, 2016, for failing to attend a disciplinary meeting.

On May 31, 2018, the EEOC issued plaintiff a right-to-sue letter. On September 14, 2018, plaintiff filed her judicial complaint with this Court. Her amended complaint alleges discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § and interference and discrimination under the Family Medical Leave Act.

## **DISCUSSION**

Defendant moves to dismiss plaintiff's complaint (a) under F. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction, arguing that plaintiff's claims must be decided by arbitration pursuant to an arbitration agreement; and (b) under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, arguing that plaintiff's claims are untimely. (Doc. 44).

### Subject-Matter Jurisdiction

Under Rule 12(b)(1), a party may move to dismiss a claim for lack of subject-matter jurisdiction. Unlike a motion made under Fed. R. Civ. P. 12(b)(b), in a Rule 12(b)(1) motion the Court may refer to evidence outside the pleadings to resolve disputed factual issues. *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (citing *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990)). The plaintiff bears the burden of establishing subject-matter jurisdiction. *Steinbuch v. Culter*, 518 F.3d 580, 585 (8th Cir. 2008).

Defendant contends that the Court lacks subject matter jurisdiction over plaintiff's FMLA claims because she was a union member and bound by the terms of her Collective Bargaining Agreement ("CBA"). Defendant argues that the CBA requires that FMLA claims be decided by arbitration. Plaintiff disagrees.

While an express agreement to arbitrate is generally presumed to be enforceable, a union's waiver of the right of its members to bring federal statutory claims in a judicial forum is only valid if it is "clear and unmistakable." *Wright v. Universal Maritime Service Corp*, 525 U.S. 70, 80 (1998). The Eighth Circuit has not directly discussed this standard, but other federal appellate courts have warned that that this standard is "exacting" and not easy to meet. *Lawrence v. Sol G. Atlas Realty*, 841 F.3d 81, 84 (2d Cir. 2016); *E. Associated Coal Corp. v. Massey*, 373 F.3d 530, 534 (4th Cir. 2004). "The fact there are at least two plausible and competing interpretations . . . is enough to demonstrate that the [CBA] provision fails to provide a clear and unmistakable waiver." *Id*. at 536.

In this case, the governing CBA provides that flight attendants "will be provided FMLA in accordance with applicable law," and also that any "dispute between the Company, the Union and a Flight Attendant concerning a Company action involving interpretation or application of this Agreement" must be decided by "the System Board of Adjustment." (Doc. 44-1, at 4-8)).

Defendant emphasizes the broad scope of the CBA's arbitration provision, for any dispute "involving interpretation or application" of the CBA. But it is the very generality of this language that makes it an ineffective waiver of specific federal statutory rights, as it fails to narrowly focus the employee's attention on the fact that she is relinquishing her right of access to the court system to redress violations of anti-discrimination laws, including the FMLA. In a similar case involving the Fair Labor Standards Act, this Court held that when an arbitration agreement "provides generally that all disputes over the meaning or application of any CBA provision are to be arbitrated . . . [This does not constitute] an express waiver of plaintiffs' right to bring their [FLSA] claims in this Court." *Kayser v. Sw. Bell Tel. Co.*, No. 4:10 CV 1495 CDP, 2010 WL 5139351, at *3, 2010 U.S. Dist. LEXIS 130788 at *8-9 (E.D. Mo. Dec. 10, 2010).

Defendant also focuses on the language in the CBA that specifically references the FMLA, promising that flight attendants "will be provided FMLA in accordance with applicable law." However, this merely states a truism—that the company will grant

5

leaves of absence to its employees in conformity with the FMLA—not a specific intent to make compliance with the FMLA a contractual commitment subject to the CBA's arbitration clause. In *Kayser*, this Court further held that a CBA provision stating the parties would comply with the FLSA "has no effect on the arbitration clause; it does not reference the clause, nor does it require the parties to arbitrate their overtime disputes." *Id.* Here, too, while the CBA explicitly mentions a promise to comply with FMLA, that sentence is unrelated to the arbitration agreement and cannot be read in conjunction with it in a way that makes it "clear and unmistakable" to union members.[1] *Cf., 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) (holding that the following provision was adequately clear and unmistakable: "All claims arising under Title VII, the ADEA, the ADA, the FMLA and any other similar laws shall be subject to the grievance and arbitration procedures as the sole and exclusive remedy for violations.").

In the absence of clear and unmistakable language, the Court will not enforce the arbitration provision in the CBA to bar plaintiff's FMLA claim.

Timeliness

Regarding defendant's Rule 12(b)(6) argument that the complaint should be dismissed because the action is untimely, the Court must convert the motion to dismiss into one for summary judgment. Plaintiff has submitted a declaration in her response to

---

[1] The CBA configuration in this case—which involves a general arbitration provision coupled with a FMLA compliance provision—is common. Multiple cases have held that it does not constitute the "clear and unmistakable" waiver of statutory rights required by the Supreme Court's decision in *Wright*. *See, e.g., Rogers v. New York Univ.*, 220 F.3d 73, 76-77 (2d Cir. 2000); *Cloutier v. Trans State Holdings*, 2016 WL 3181708 at *3, 2016 U.S. Dist. LEXIS 74326 at *7-10 (N.D. Ill. June 8, 2016); *South v. GoJet Airlines, LLC*, 2013 WL 6253582, at *4, 2013 U.S. Dist. LEXIS 172513 (S.D. Iowa 2013); *Granados v. Howard Maint.*, 2006 WL 435731, 2006 U.S. Dist. LEXIS 6918 at *18-19 (S.D.N.Y. Feb. 22, 2006).

Defendant refers to *Montgomery v. Compass Airlines*, 98 F. Supp.3d 1012 (D. Minn. 2015), to support its position. But *Montgomery* is seems to contradict the general consensus of federal judicial authority, and the Court declines to adopt its approach.

the motion to dismiss, detailing her receipt of the right-to-sue letter. (Doc. 50, Ex. 1). These details are not included in her amended complaint. Rule 12(d) states that, when a party presents materials outside the pleadings on a 12(b)(6) motion to dismiss, which materials are not excluded by the court, "the motion must be treated as one for summary judgment under Rule 56," and [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." The information set out in plaintiff's declaration appears relevant to defendant's motion and is not excluded by the Court. Because this information is presented by plaintiff in opposition to defendant's motion and not by defendant, the Court believes that the proper procedure is to deny defendant's Rule 12(b)(6) argument without prejudice to being resubmitted to the Court in a Rule 56 motion for summary judgment to which plaintiff may respond, rather than establishing a deadline for the filing of a Rule 56 motion at this time.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) (Doc. 43) is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) on the issue of timeliness of plaintiff's complaint (Doc. 43), **is denied without prejudice to be taken up in a Rule 56 motion for summary judgment.**

**IT IS FURTHER ORDERED** that defendant may have 30 days from the date of this Memorandum and Order to file an answer or other response to plaintiff's amended complaint.

                 /s/  David D. Noce    
                 UNITED STATES MAGISTRATE JUDGE

Signed on July 19, 2019.